## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 4:16-CV-1012** |
| | § | |
| **V.** | § | Removed from the 55th Judicial District |
| | § | Court of Harris County, Texas; |
| **ENI TRADING & SHIPPING INC.** | § | Cause No. 2016-12469 |
| | § | |
| **Defendant.** | § | |
| | § | |

## DEFENDANT'S AMENDED ANSWER AND DEFENSES

Defendant Eni Trading & Shipping Inc. ("Defendant" or "ETS") files this Amended Answer and Defenses to Plaintiff Jane Doe's ("Plaintiff") Original Petition ("Petition").

### I.
### INTRODUCTION AND SUMMARY

**COMPLAINT ¶1:** This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), which prohibits sexual harassment. 42 U.S.C. § 2000e, *et. seq.* Plaintiff was employed by Defendant where she was subjected to extreme sexual harassment at the hands of a co-worker. Despite Defendant's knowledge of the co-worker's actions, it failed to take appropriate corrective action, resulting in continued harassment. Specifically, Defendant's president was directly informed by Plaintiff of concerns regarding the co-worker where she told him she was scared of the co-worker; however, the company failed to conduct an investigation or otherwise take appropriate remedial measures. Although Defendant eventually did terminate the co-worker, it did not act in a timely manner, thus causing Plaintiff to suffer further.

**ANSWER:**

ETS admits that Plaintiff asserts a claim under Title VII for sexual harassment, but denies Plaintiff is entitled to any relief. ETS further admits that it employed Plaintiff and that Plaintiff had a relationship with one of her co-workers, Heriberto Latigo ("Latigo"). ETS also admits that Plaintiff informed its president, Giorgio Mari ("Mari"), of her relationship with Latigo. Lastly,

36026052v.3

ETS admits that it terminated Latigo's employment. ETS denies the remaining allegations contained in Paragraph 1.

## II
## DISCOVERY CONTROL PLAN

**COMPLAINT ¶2:**   Plaintiff intends that discovery should be conducted under the Discovery Control Plan imposed by Level 2 of the Texas Rules of Civil Procedure, Tex. R. Civ. P. 190.3.

**ANSWER:**

Due to removal, this assertion is no longer applicable. This case will proceed under the federal rules governing discovery. Consequently, ETS does not admit or deny any fact contained in Paragraph 2.

## III.
## JURISDICTION AND VENUE

**COMPLAINT ¶3:**   This Court has jurisdiction over all claims in this action under 42 U.S.C. § 2000e-5(f)(3). Plaintiff is seeking monetary relief in an amount over $200,000 but not more than $1,000,000.

**ANSWER:**

ETS denies the allegations contained in Paragraph 3 and asserts that ETS properly removed this case to federal court and that this Court is properly exercising jurisdiction over Plaintiff's claims.

**COMPLAINT ¶4:**   Venue is proper in Harris County, Texas because a substantial part, if not all, of the events or omissions giving rise to Plaintiff's causes of action occurred in Harris County.

**ANSWER:**

ETS admits that as alleged in the Petition a substantial part, if not all, of the alleged events or omissions giving rise to Plaintiff's causes of action occurred in Harris County. By so admitting, ETS does not admit to the truth of the allegations. ETS denies that venue is proper in Texas state court and asserts that ETS properly removed this case to federal court and that this District is the proper venue to adjudicate Plaintiff's claims.

2

## IV.
## PARTIES

**COMPLAINT ¶5:**   Plaintiff is a citizen of the United States of America, and is a resident of Texas. Plaintiff, is a survivor of multiple sexual assaults. The highly sensitive and personal nature of the information detailed in this petition, including the horrendous acts endured by the Plaintiff at the hands of the Defendant, form the basis of this lawsuit, and justify Plaintiff proceeding under the pseudonym Jane Doe.

**ANSWER:**

ETS admits that Plaintiff is a United States citizen and a resident of Texas. ETS does not

have knowledge as to whether Plaintiff was sexually assaulted and can neither admit or deny

whether Plaintiff is a survivor of multiple sexual assaults. ETS denies the remaining allegations

contained in Paragraph 5.

**COMPLAINT ¶6:**   Defendant is a corporation duly licensed to do business in Texas, with a principal place of business in Harris County, Texas. Defendant may be served through its registered agent, Capitol Corporate Services, Inc. located at 206 E 9th St., Suite 1300, Austin, Texas 78701.

**ANSWER:**

ETS admits to the allegations in Paragraph 6.

## V.
## PROCEDURAL REQUISITES

**COMPLAINT ¶7:**   On or about May 14, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue notice on November 30, 2015. This lawsuit is being filed within 90 days of receipt of the EEOC right-to-sue notice.

**ANSWER:**

ETS admits to the allegations in Paragraph 7.

## VI.
## FACTS

**COMPLAINT ¶8:**   Plaintiff was employed by Defendant from December 2012 to December 2014. She briefly dated a lead trading analyst named Heriberto Latigo. Plaintiff tried to end her relationship with Latigo in early 2014 because of his abusive treatment towards her; however, he continued to harass and abuse her for several months in 2014, while they were both employed by Defendant. Latigo publicly humiliated Plaintiff and made offensive, sexual comments towards

3

36026052v.3

her. Many of Latigo's actions/comments were made during work hours and by using Defendant's property and resources (such as its computers and emails). For example, while sitting next to Plaintiff at work, Latigo would send private and intimate photographs of Plaintiff to her work email and threaten to post them online if Plaintiff did not perform sexual favors during their lunch break.

**ANSWER:**

ETS admits that it employed Plaintiff from approximately December 2012 to December 2014. ETS also admits that Plaintiff had a relationship with her co-worker, Latigo, and that when ETS investigated the relationship between Plaintiff and Latigo, Plaintiff provided a number of communications that she alleged Latigo sent to her using private, non-company provided electronic communications platforms, at least some of which contained intimate photographs of Plaintiff. ETS denies the remaining allegations contained in Paragraph 8.

**COMPLAINT ¶9:**   In approximately late July 2014, Plaintiff had a conversation with the president of Defendant, Giorgio Mari, in which she told him that she was in a relationship with Latigo, was having problems with Latigo, and was scared of Latigo. Because of Plaintiff's fear of Latigo, she asked Mari not to take any further action; however, Mari suggested that Plaintiff contact Human Resources or the police. Despite Mari's knowledge of Plaintiff's fear and even his recommendation to contact the police, Mari took no action in order to investigate Latigo or otherwise ensure the safety of Plaintiff. Instead, Mari allowed Latigo to continue his employment and actions uninterrupted, as an employee of Defendant.

**ANSWER:**

ETS admits that Plaintiff informed its president, Mari, of her relationship with Latigo. ETS further admits that Plaintiff instructed Mari to keep her relationship with Latigo confidential and to not share the information with anyone, and that Mari encouraged Plaintiff to contact ETS's Human Resources Department or the police. ETS also admits that Mari honored Plaintiff's wishes and did not disclose Plaintiff's relationship with Latigo to anyone at ETS. ETS denies the remaining allegations contained in Paragraph 9.

**COMPLAINT ¶10:**  Despite Plaintiff's fears and request that Mari not take any action, Mari, as president of Defendant, did have an affirmative duty to conduct an investigation as a matter of law. As one court has succinctly explained:

36026052v.3

"Generally, the negligence standard governs employer liability for *co-worker* harassment." *See Sharp v. City of Houston,* 164 F,3d 923, 929 (5th Cir, 1999) (emphasis in original). An employer may be liable for harassment if it "knew or should have known of the harassment in question and failed to take prompt remedial action," *Williamson v. City of Houston,* 148 F.3d 462, 464 (5th Cir. 1998). Notice of the harassing conduct triggers an employer's duty to take prompt corrective action that is "reasonably calculated" to end the harassment. *Skidmore v. Precision Printing & Packaging, Inc.,* 188 F.3d 606, 615 (5th Cir.I999), "What is appropriate remedial action will necessarily depend on the particular facts of the case -- the severity and persistence of the harassment, and the effectiveness of any initial remedial steps. . . [N]ot every response by an employer will be sufficient to discharge its legal duty. Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Id.* at 615-16, *quoting Waltman v. Intl Paper Co.,* 875 F.2d 468, 479 (5th Cir. 1989) ....

Under Title VII, an employer has actual knowledge of harassment that is known to "higher management." *Sharp, 164 F.3d at 929.* A person is in "higher management" if he or she has "the power not only to hire and fire the offending employee but also to take disciplinary action, *to provide significant input into employment decisions,* to instruct the offending employee to cease the harassing behavior, or to implement other means of taking remedial action." *Id.* (emphasis added).

*EEOC v. Lamy Thomas, Inc.,* 2006 U.S. Dist, LEXIS 48469, \*56 — 58 (ED. Tex. July 14, 2006). This same case also emphasized that "an employer's investigation of a harassment complaint is not a gratuitous or option undertaking; under federal law, an employer's failure to investigate may allow a jury to impose liability on the employer," *Id.,* at \*59 (citing *Malik v. Carrier Corp.,* 202 F,3d 97, 105 (2d Cir. 2000) (emphasis added).

**ANSWER:**

ETS denies the allegations contained in Paragraph 10.

**COMPLAINT ¶11:** Mari's failure to act in a timely manner was disastrous. Over the course of the next several months after Plaintiff complained to Mari, Plaintiff was subjected to numerous threatening and sexually explicit emails and other communication from Latigo. These include, but are not limited to: a) threatening to leak private photographs of Plaintiff; b) threatening to disclose the fact that Plaintiff underwent an abortion because of Latigo; c) attempting to force a relationship; and d) actually posting naked pictures of Plaintiff on Facebook and emailing them to Plaintiff's family. These communications happened continuously until October. In fact, Latigo's continued harassment was so extensive, that Plaintiff attempted suicide in September 2014.

36026052v.3

**ANSWER:**

ETS admits that Plaintiff communicated with Latigo after speaking with Mari. ETS further admits that when it investigated the relationship between Plaintiff and Latigo, Plaintiff provided a number of communications that she alleged Latigo sent to her using private, non-company provided electronic communications platforms and that at least some of those communications contained intimate photographs of Plaintiff. ETS does not have knowledge as to whether Plaintiff attempted suicide and can neither confirm or deny that allegation. ETS denies the remaining allegations contained in Paragraph 11.

**COMPLAINT ¶12:** Plaintiff also learned, in about August 2014, that another employee of Defendant also complained to Defendant about Latigo's harassing behavior. Specifically this other employee informed Plaintiff that she had complained to Defendant's CFO in December 2013 that Latigo was treating her improperly and also again in August 2014 that Latigo was treating Plaintiff improperly. Despite Defendant's direct knowledge of Latigo's sexually harassing behavior on at least three separate instances, it failed to take any remedial action.

**ANSWER:**

ETS denies the allegations contained in Paragraph 12.

**COMPLAINT ¶13:** Finally, in on or about October 20, 2014, Plaintiff made a formal complaint to Defendant regarding Latigo's treatment towards her. Defendant was suspended on October 22, 2014. Plaintiff was interviewed on October 24, 2014 regarding her complaint; however, she was not informed as to any other steps Defendant took with respect to her complaint, nor the outcome of the investigation. Eventually, Plaintiff learned, via one of Latigo's numerous unsolicited emails to her, that he was fired in mid-November 2014. Defendant did not take any actions to prevent Latigo from communicating with Plaintiff. On November 17, 2014, Latigo sent an email to Plaintiff, Defendant's CEO (Mari), the Global General Manager, the Senior Vice President, and Plaintiff's immediate manager falsely accusing Plaintiff of engaging in illegal activities and also referencing the existence of nude photographs of Plaintiff. Defendant did nothing in response to this email.

**ANSWER:**

ETS admits that after another individual alerted the ETS Human Resources Department of concern for Plaintiff, a member of its Human Resources Department questioned Plaintiff and ultimately convinced Plaintiff to make a complaint against Latigo. ETS also admits that Latigo

36026052v.3

sent an email in November regarding his relationship with Plaintiff to ETS employees. ETS

denies the remaining allegations contained in Paragraph 13.

**COMPLAINT ¶14:** Eventually, even though Latigo was no longer working for Defendant, because of Defendant's failures to take timely corrective action, the embarrassment she faced, and the lack of responsiveness from Defendant, Plaintiff felt forced to quit her job.

**ANSWER:**

ETS admits that Plaintiff voluntarily terminated her position with ETS. ETS denies the

remaining allegations contained in Paragraph 14.

**COMPLAINT ¶15:** Based on Defendant's actions, Plaintiff was subjected to a hostile work environment based on her sex. Defendant's actions were committed with malice. Plaintiff has suffered economic damages, mental anguish, emotional distress, and other compensatory damages as a result of Defendant's actions.

**ANSWER:**

ETS denies the allegations in Paragraph 15.

## VII.
## CAUSE OF ACTION

**COMPLAINT ¶16:** Plaintiff asserts a cause of action under Title VII for sexual harassment. *See* 42 U.S.C. § 2000e *et. seq.*

**ANSWER:**

ETS admits that Plaintiff asserts a cause of action under Title VII for sexual harassment,

but denies Plaintiff is entitled to any relief.

## VIII.
## ATTORNEY'S FEES

**COMPLAINT ¶17:** As a result of Defendant's actions, Plaintiff has had to retain the undersigned attorneys and incur reasonable and necessary attorney's fees.

**ANSWER:**

ETS denies the allegations contained in Paragraph 17.

36026052v.3

## IX.
## JURY DEMAND

**COMPLAINT ¶18:**  Plaintiff hereby demands trial by jury.

**ANSWER:**

ETS is not required to confirm or deny the allegations contained in Paragraph 18.

## X.
## REQUESTS FOR DISCLOSURE

**COMPLAINT ¶19:**  Plaintiff requests that Defendant disclose, within fifty (50) days of service of this request, the information and material described in section 194.2 of the Texas Rules of Civil Procedure. Tex. R. Civ. P. 194.2.

**ANSWER:**

Due to removal, this assertion is no longer applicable. Consequently, ETS does not admit

or deny any fact contained in Paragraph 19.

## XI.
## PRAYER

**COMPLAINT ¶20:**  WHEREFORE, Plaintiff respectfully requests that this Honorable Court cites Defendant to answer and appear, and upon final trial enter a judgment upon her favor and award the following:

1.   Actual damages;

2.   Back pay and benefits;

3.   Punitive and exemplary damages;

4.   Compensatory damages;

5.   Emotional distress and mental anguish damages;

6.   Reasonable attorney's fees;

7.   Court costs;

8.   Prejudgment and post-judgment interest accruing at the maximum rate allowed by law;

9.   All further relief to which Plaintiff may be entitled.

36026052v.3

**ANSWER:**

Defendant denies the allegations contained in Paragraph 20.

## XII.
## DEFENSES

1.    Plaintiff has failed, in whole or in part, to state a claim upon which relief may be granted.

2.    Defendant invokes the applicable damages caps from Title VII on awards of compensatory and/or punitive damages. In particular, Defendant had fewer than 100 employees in the United States during the relevant time, resulting in a damages cap of $50,000.00.

3.    Plaintiff is not entitled to some or all of the relief sought in her petition to the extent that she has failed to mitigate her alleged damages.

4.    Plaintiff is not entitled to some or all of the relief sought in her petition to the extent that Plaintiff failed to exhaust her administrative remedies.

5.    Plaintiff is not entitled to some or all of the relief sought in her petition to the extent that her claims are barred by the applicable statute of limitations.

6.    Plaintiff is not entitled to some or all of the relief sought in her petition to the extent that her claims are barred by waiver, laches, and/or estoppel.

7.    Plaintiff's damages are the result in whole or in part of preexisting conditions and/or independent causes and are not the result of any act or omission on the part of ETS.

8.    The alleged acts or omissions of ETS were not the proximate cause of Plaintiff's alleged injuries.

9.    ETS's actions were done in good faith, without malice, and without intent to violate the law or cause Plaintiff harm. As such, the relief sought by Plaintiff in the form of exemplary or punitive damages is not available.

36026052v.3

10.     Plaintiff cannot recover punitive and/or exemplary damages because ETS cannot be vicariously liable for allegedly discriminatory employment decisions of managerial agents because those decisions, if any, were contrary to Defendant's good faith efforts to comply with applicable federal, state, and local laws and regulations prohibiting employment discrimination.

11.     ETS exercised reasonable care to prevent and/or promptly correct any alleged discriminatory or retaliatory behavior. Plaintiff unreasonably failed to take advantage of ETS's preventive or corrective opportunities. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 805-07 (1998).

Defendant reserves the right to assert additional defenses as they become known.


Respectfully submitted,

/s/ John L. Collins
John L. Collins
TX Bar No. 00796025
S.D. Texas No. 20013
SEYFARTH SHAW, LLP
700 Milam, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile:  (713) 225-2340
jcollins@seyfarth.com

ATTORNEY-IN-CHARGE FOR DEFENDANT
ENI TRADING & SHIPPING INC.

36026052v.3

Brian A. Wadsworth
TX Bar No. 24075231
S.D. Texas No. 2311180
**SEYFARTH SHAW, LLP**
700 Milam, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile:  (713) 225-2340
bawadsworth@seyfarth.com

COUNSEL FOR DEFENDANT
ENI TRADING & SHIPPING INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record, as listed below, via ECF filing, on this the 2nd day of December, 2016.

Nitin Sud
SUD LAW, PC
6750 West Loop South, Suite 920
Bellaire, TX 77401
nsud@sudemploymentlaw.com

Joseph Mathew
THE LAW OFFICES OF J. MATHEW, PLLC
4203 Montrose Blvd., Suite 410
Houston, Texas 77006
jmathew@jmathewlawfirm.com

/s/ John L. Collins
John L. Collins

36026052v.3